**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAHIR MUKTAR | No. 1:25-cr-00041-SDN |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through undersigned counsel, respectfully submits this memorandum to assist the Court in sentencing.

On April 15, 2026, following a three-day trial, the jury found the defendant guilty on the one-count indictment, charging the defendant with Attempted Sex Trafficking of a Minor under 14 years old, in violation of 18 U.S.C. § 1591(a)(1) (Dkt. 128). The sentencing hearing is scheduled for October 20, 2026 (Dkt. 145).

### I. Acceptance of Responsibility

The government agrees with United States Probation and Pretrial Services ("USPO") that the defendant has not clearly demonstrated acceptance of responsibility so is not entitled to a two-point deduction in his guideline calculation. PSR ¶¶ 22 & 31. U.S.S.G. § 3E1.1(a) provides "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the defendant's offense level is decreased by two levels. U.S.S.G. § 3E1.1(a). If the defendant qualifies for a two-level decrease under § 3E1.1(a) and the offense level prior to that decrease is sixteen or higher, the offense level may be decreased by one more level "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting

the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b).

"The defendant has the burden of proving by a preponderance of the evidence that this downward departure is warranted." *United States v. Mello,* 164 F.4th 120, 137 (1st Cir. 2026), citing *United States v. McCarthy*, 32 F.4th 59, 65 (1st Cir. 2022). Even if the defendant had pleaded guilty and spared the government from the expense of a trial, he would not have been automatically "entitled to an adjustment . . . as a matter of right." U.S.S.G. § 3E1.1, Appl. Note 3. Yet if the defendant truthfully admitted to the offense conduct, that would have been "significant evidence of acceptance of responsibility for the purposes of subsection (a)." U.S.S.G. § 3E1.1, Appl. Note 3. However, here that is not the case at all.

In "rare circumstances" where a defendant has elected to proceed to trial, he or she may still be entitled to the reduction under U.S.S.G. § 3E1.1, but only if he or she has clearly demonstrated acceptance of responsibility for the offense conduct. *United States v. Rosario-Peralta*, 199 F.3d 552, 570 (1st Cir. 1999). This is not one of those rare circumstances. Rather the defendant has maintained his factual innocence, and thus, he is not entitled to a downward departure for acceptance of responsibility. *Id. See also Fagan v. United States*, 256 F. Supp. 3d 53, 55 (D.Mass. June 20, 2017); *United States v. Burdulis*, 209 F. Supp. 3d 415 (D.Mass. August 1, 2016) (rejecting defendant's post-trial claims of ineffective assistance of counsel where defense counsel at sentencing did not argue for reduction for acceptance of responsibility where such an argument would not have been successful). The defendant testified that his intent was to save the children being advertised, and he maintained this version of events during his post-conviction interview with USPO for purpose of the PSR. PSR ¶ 49A. His "acceptance"

that the jury arrived at an unfavorable verdict is not the same as acceptance that he committed the underlying offense conduct, belied by his continuous dispute of the facts of which the jury found him guilty. PSR ¶ 17. *United States v. D'Angelo*, 802 F.3d 205, 209 (1st Cir. 2015) (denial of relevant offense conduct is inconsistent with acceptance of responsibility).

Furthermore, although the government did not move for an obstruction enhancement pursuant to § 3C1.1, the facts surrounding his trial testimony may have actually warranted an increase in his guideline offense level. If the Court found by a preponderance of the evidence that the defendant deliberately lied about a material matter, in this case, his intent when he arrived at the hotel, this would have permitted an enhancement for obstruction of justice based on perjury. *United States v. Maguire*, 752 F3d 1, 6 (1st Cir. 2014), citing *United States v. Shinderman*, 515 F.3d 5, 19 (1st Cir. 2008); *United States v. Akitoye*, 923 F.2d 221, 228-229 (1st Cir. 1991). Based on the overwhelming evidence, the jury did not find the defendant's claim that he traveled to Bangor to "save" the children being advertised. The defendant admitted on cross examination that he could have called the police but elected not to do so. He did not express any concern for the welfare of the purported 11-year-old or 13-year-old minors in his chats with the undercover officers who claimed to be their mother. PSR ¶¶ 14 & 17. He just confirmed he was there for "my girls" when another undercover officer approached his vehicle in the hotel parking lot, without inquiring about the children's welfare, and instead he had the $300 in cash in his pocket the same amount that had been negotiated. PSR ¶ 15. All of these facts with reasonable inferences support a finding that is reflected in the jury's verdict – that the defendant arrived at the hotel to attempt to sex traffic one or more children under the age of fourteen. Therefore, the

Court can make a finding consistent with the jury's verdict that the defendant willfully perjured himself on the stand when he claimed that he arrived at the hotel for another purpose other than to engage in commercial sex with one or more minor female.

Where a defendant has engaged in conduct that could justify in an enhancement for obstruction of justice pursuant to § 3C1.1, applying a reduction for acceptance of responsibility would be wholly inconsistent with what acceptance means under § 3E1.1. *United States v. Mason,* No. 91-1912, 972 F.2d 337, 1992 WL 197367, 1992 U.S. LEXIS 28823 at *8-9 (1st Cir. 1992), citing Application Note 4 to U.S.S.G. § 3E1.1 (finding a two-level increase for obstruction after the defendant perjured himself about some facts in dispute at trial, and denying the two-level reduction for acceptance); *United States v. Paz Uribe,* 891 F.2d 396 (1st Cir. 1989) (defendant who stood trial and testified as to his version of involvement in drug distribution, and contended on appeal that the court should have believed his testimony, was not entitled to decrease), *cert. denied,* 495 U.S. 951 (1990); *United States v. Reyes,* 927 F.2d 48 (1st Cir. 1991) (where appellant persisted in his denial of being captain of the vessel involved in an illegal alien smuggling ring and said nothing about his role as a co-pilot, this conduct reflected continuous desire to minimize his responsibility for the crime). By that same rationale, applying a reduction for acceptance after the defendant under oath falsely claimed to arrive at the hotel to "rescue" the children being advertised would defy logic and the rationale behind § 3E1.1.

The defendant's failure to comply with the conditions of his release is yet another reason indicating that the defendant is not entitled to a reduction of his offense level under § 3E1.1. "A defendant's failure to comply with conditions of a bond [can] be highly relevant to assessing the sincerity of the defendant's contrition." *United States v.*

*McLaughlin*, 378 F.3d 35, 40 (1st Cir. 2004) (alteration in original) (quoting *United States v. Hooten*, 942 F.2d 878, 883 (5th Cir. 1991)). The defendant violated his conditions of release by acquiring an unauthorized and unmonitored cellular device. PSR ¶ 8. He admitted to doing so to his supervising probation officer to apparently communicate over Snapchat and access family photographs stored on a Google account, but the evidence revealed a more sinister purpose for acquiring this unauthorized electronic device. *Id*. Specifically, he set up this phone in the basement bedroom area of one of his rental properties and did so to surreptitiously film an unhoused woman involved in sexual activity without her knowledge and consent. PSR ¶¶ 8, 9, & 49B. The defendant admitted to probation that he was having a sexual relationship with the female in the video, he had provided her with a place to stay because she was homeless, and he set up the secret recording device to determine what she was doing in the basement. PSR ¶ 9. The defendant continues to implausibly deny he intended to capture sexual activity in the recording, despite the fact the recording of that sexual activity was saved on his phone. PSR ¶¶ 8, 49B. It is concerning that he preyed upon a vulnerable female, albeit not a child, when charged with attempting to engage in commercial sexual activity with purportedly vulnerable minor females. Moreover, the surreptitious filming recorded this woman while she was nude and having sexual relations with another man, in violation of the state offense of "Violation of Privacy" under Title 17-A M.R.S. § 511, so in essence, he committed a sexually related offense while he was being supervised pretrial for a federal sex crime. Therefore, his actions on pretrial release raise a significant question as to the "sincerity of his contrition," further justifying why he is not entitled to the acceptance of responsibility deduction. *See United States v. O'Neil*, 936 F.2d 599, 599-601 (1st Cir. 1991) (considering the

defendant's usage of marijuana and breaking into a building while on bail prior to trial for the offense conduct to be continued criminal conduct demonstrating a lack of sincere remorse, justifying denying the two-level reduction under § 3E1.1).

Finally, the defendant has failed to demonstrate how his completion of an 18-hour online "John School" constitutes significant "post-offense rehabilitative efforts" of the type contemplated by U.S.S.G. § 3E1.1, Appl. Note 1. While this online course claims to be designed for individuals arrested or charged with soliciting sex, it does not appear directed for those who engage in commercial sex with minors under the age of fourteen who are unique targets of this type of exploitation.[1] Even if that was one of the topics brought up in this online course, the other factors described above undoubtedly weigh in favor of denying the two-point reduction under § 3E1.1.

## II. Guidelines Calculation and Statutory Penalties

Having explained above why the defendant is not entitled to the two-point reduction for acceptance of responsibility, the defendant's calculated total offense level under the guidelines is 36 with a criminal history category of I. PSR ¶¶ 32 & 35. The total offense level takes into account the use of computer or interactive computer service special offense characteristics sentencing enhancement pursuant to § 2G1.3(b)(3)(A). PSR ¶ 25. The Government agrees that the guidelines imprisonment range is 188 months to 235 months, with a term of supervised release of at least five years and up to life. PSR ¶¶ 60 & 62.

The government also notes that the conviction in this case carries a mandatory minimum sentence. On the verdict form, the jury made the additional finding that the defendant "knew or recklessly disregarded the fact that the offense involved a person

[1] https://www.courtsolutionsonline.com/JohnSchool/

who had not attained the age of 14 at the time of the offense" (Dkt. #128; PSR ¶ 19). Therefore, the jury's verdict triggers the penalty provisions under 18 U.S.C. § 1591(b)(1), which provides, in relevant part:

> "[t]he punishment for an offense under subsection (a) is ... if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life."

18 U.S.C. § 1591(b)(1). Because Congress mandated the fifteen year minimum mandatory sentence for this offense, following the defendant's conviction by a jury, the Court must impose at least the minimum mandatory fifteen-year (180-month) sentence. The defendant has made no objection to this point.

The briefest recitation of the facts underscores the applicability of the relevant enhancements. The defendant initiated the communications after reading the ad; he elected to proceed with the communications despite being told that the "girls" advertised for commercial sex were 11 and 13-years-old; he – not law enforcement - opted to drive to Bangor to the prearranged location with the $300. PSR ¶¶ 14-18. In the chat thread with the undercover, using both phone numbers, the defendant indicated he wanted to ejaculate multiple time when arranging to meet with the two purported minor "daughters." PSR ¶ 14 & 17. The government respectfully submits that the mandatory minimum comports with the guidelines in this case in indicating the appropriate sentence.

### III. Factors under § 3553(a)

Based on several factors delineated in the PSR, some of which are underscored below, as well as arguments that the Government intends to make at the sentencing

hearing, the facts of this case call for a sentence within the low end of the guidelines range, followed by lifetime supervised release and restitution to identified victims pursuant to 18 U.S.C. § 2259(b)(2).

The sentencing factors set forth in 18 U.S.C. § 3553(a) support an imprisonment sentence at least fifteen years followed by at least five years of supervised release. The Court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant" when determining an individualized sentence. The Court must also consider "the kinds of sentences available," the calculated guidelines range and any relevant policy statements of the Sentencing Commission, "the need to avoid unwarranted sentence disparities," and "the need to provide restitution to any victims." 18 U.S.C. § 3553(a). Any sentence imposed should reflect the following purposes set forth in § 3553(a)(2): (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (2) "to afford adequate deterrence to criminal conduct"; (3) "to protect the public from further crimes of the defendant"; and (4) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.*

**a. History and characteristics of the defendant.**

The defendant does not have a prior criminal record, and no known arrests prior to this incident, a factor that the Court may weigh in favor of a sentence at the lower end of the guideline range. PSR ¶¶ 34-38. The defendant has roots in the Lewiston, Maine area, where he lived until he was detained on this case. PSR ¶ 39. The government recognizes that the defendant has endured challenging circumstances as a child prior to immigrating to the United States. PSR ¶¶ 40, 42 & 74. That being said, having never

been subjected to sexual abuse, there is little information in his background to explain how he got involved in this offense conduct in the first place and his pretrial release violation of conditions involving the secret recording of a female in an intimate private setting. PSR ¶ 41.

**b. Facts and circumstances of the offense which the defendant was convicted of and seriousness of offense**

The government need not belabor the entire facts of the offense which came out during testimony and through exhibits admitted at trial, some facts of which have already been referenced in this memorandum. The following is a brief recitation of the summary of the facts of which the defendant was convicted.

In a multiple-agency law-enforcement operation at the end of January 2025, Maine State Police posted online advertisements on Skip the Games, a website used for commercial sexual activity. PSR ¶¶ 10-13. The advertisements had photographs of two females with emojis over their faces and listed various sexual activities that the individuals being advertised were available to do. Gov't Trial Exhibits 1-4, 6 & 7.

On January 31, 2025, the defendant used two separate telephone numbers to respond to the number posted at the bottom of the advertisements. PSR ¶¶ 14, 16 & 17. Undercover officers accessed the account for the phone number posted on the advertisement. When they responded to the defendant's text messages from the two separate phone number that initiated the communications, from the onset of the exchanges, they informed the defendant that the females shown on the advertisements poster were 11 years old and 13 years old. PSR ¶¶ 14 & 17. The undercover officers presented themselves as the mother of these girls who were advertising them for commercial sex at a hotel in Bangor. *Id.* They never held the "mother" as someone who

was available for commercial sexual activity.

The defendant first contacted the posted phone number from the advertisements using his phone number ending in 1626, which is the phone number from his personal cell phone device. In the text thread with the undercover, the defendant utilizing in the 1626 number, negotiated to engage in "in call" services around 8:30pm at the Bangor hotel with the 13-year-old "Sophia." In that thread, using the 1626 number, the defendant repeatedly asked, "is 2 pop okay," expressing his desire to ejaculate twice. PSR ¶ 17; Gov't Trial Exhibits 9 & 9b.

After commencing the text thread using his 1626 number, concurrently, the defendant used a TextNow phone number ending in 6302 to engage with the number posted on the advertisement. He texted, using the 6302 number, inquiring about the advertisement, again being advised by the undercover "mother" that her 11-year-old and 13-year-old daughters were the ones available for commercial sex. The undercover "mother" informed him that the rates were *"hr 300*[2] *hh 150*[3] *qv 100*[4] *no anal w the little one."* The defendant, using the 6302 number negotiated to have a half an hour session with both children. Again, as he had done with the 1626 number, he inquired about being able to ejaculate multiple times as captured in this excerpt:

> 6302: *Multiple cum in one session is good right?*
>
> UC1: *w/e u wanna do its ur time. Just no anal for the little one, other one is good.*

---

[2] As reflected in trial testimony, "hr 300" refers to a price or "suggested donation" of $300 for an hour.

[3] As reflected in trial testimony, "hh 150" refers to a price or "suggested donation" of $150 for half an hour.

[4] As reflected in trial testimony, "qv 100" refers to a price or "suggested donation" of $100 for a quick visit. A quick visit in the commercial sex context refers to an arrangement of very short duration, certainly less than a half an hour.

PSR ¶ 14; Gov't Trial Exhibits 10 & 10b.

At the agreed location, with the agreed amount of cash, the defendant arrived at the time that he had arranged using the 6302 number. After confirming that he was there for "her girls," he was placed under arrest. PSR ¶ 15; Gov't Trial Exhibits 25, 26, 27, 28, 29, 38a, & 39a.

Homeland Security Investigations examined the defendant's cell phone and found artifacts consistent with the defendant's prior solicitation of commercial sexual activity, some of which were admitted at trial under Fed. R. Evid. 404(b). Gov't Trial Exhibits 35, 37b, 37e, 37h, & 37i. The defendant's prior web browser activity on Skip the Games advertisements and his text communications with apparent sex workers showed that he was familiar with the sex work industry at the time that he arrived at the hotel to meet with the alleged 11-year-old and 13-year-old being advertised.

At no time did the defendant demonstrate remorse. As already discussed above, he never inquired about the safety of the "girls" being advertised in the chat. Even though the children being advertised were fictitious and this was a sting operation, the defendant's offense conduct is serious and merits a sentence that holds him accountable for these actions.

**c. Adequate deterrence.**

Likely the most compelling factor that should be weighed in this case is fashioning a sentence that adequately deters others from committing the same offense. Sadly, online sexual exploitation of minors is increasingly prevalent and causes harm to

the real-life children being impacted and their communities and families.[5] Commercial sex websites, such as the one used in this operation, is one avenue where children are predated upon. Congress recognized the harm that sex trafficking and attempted sex trafficking have on children and society at large by enacting minimum mandatory penalties for these offenses under 18 U.S.C. § 1591(b). Imposing a significant imprisonment for the defendant who attempted to engage in sexual activity with minors who were advertised on a commercial sexual website would send a message to other potential offenders to not seek out this type of criminal activity.

**d. Rehabilitation needs.**

A sentence within the statutory parameters would satisfy rehabilitative purposes, affording him the opportunity to take advantage of treatment while incarcerated, and afford him adequate time to choose a better path, while taking accountability for his wrongdoings. A subsequent term of supervised release with the mandatory, standard and special conditions recommended by U.S. Probation would help ensure that he continues to course correct. PSR ¶¶ 75-77.

The government agrees with all the conditions of supervised release recommended by USPO. Additionally, the government further seeks an additional special condition that under an individualized assessment, comports with the facts of this case, including prior activity on commercial sexual websites that were introduced at trial under Fed. R. Evid. 404(b):

> The defendant shall not engage in communications, solicitation, or procurement of commercial sexual activity with others, including adults and minors, via accessing online websites, other online platforms, electronic

[5] Finkelhor D, Turner H, Colburn D. "Prevalence of Online Sexual Offenses Against Children in the US." *JAMA Netw Open*. 2022;5(10):e2234471. doi:10.1001/jamanetworkopen.2022.34471

communications, and/or by other means.

USPO is already recommending that the defendant engage in the Computer and Internet Monitoring Program, so the condition proposed by the government is something that they will be equipped to monitor for. PSR ¶ 77(11). Since the defendant committed this offense by engaging with online advertisements for commercial sex on the Skip the Games website, prohibiting him from reengaging with these websites and other online forums would help prevent recidivism. Furthermore, the solicitation of prostitution is a crime under Maine State Law even if an offender does not cross state lines to do so and the person being advertised is an adult. *See* Title 17-A M.R.S. § 853-B. The defendant, while a supervised release client, will be prohibited from violating state, local and federal laws, so monitoring him in this way will incentivize him not to reengage in the activity that led to his conviction. PSR ¶ 75(1). This proposed condition is "sufficiently related to one or more of the permissible goals of supervisory release," which include: (1) the need to deter the defendant from further criminal conduct; (2) the need to protect the public from further crimes by the defendant; and (3) the effective education, vocational, medical, or other correctional treatment of the defendant. *United States v. Brown*, 235 F.3d 2, 6 (1st Cir. 2000); U.S.S.G. § 5D1.3(b)(1).

## CONCLUSION

For the above-described reasons and the overall factors set forth in the PSR, the circumstances in this case justify a term of imprisonment at the low end of the guidelines range, followed by a term of at least five years supervised release. Should the Court find that the circumstances support a sentence below the guidelines, it still should impose the fifteen-year minimum mandatory sentence followed by at least five years' supervised release with all the conditions recommended by the government.

Respectfully submitted,

Date: October 13, 2026

ANDREW B. BENSON
United States Attorney

BY: */s/Anne K. Yereniuk*
Assistant United States Attorney
100 Middle Street
Portland, ME 04101
207-780-3257
Anne.Yereniuk@usdoj.gov

BY: */s/ Chris Ruge*
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, ME 04401
(207) 945-0373
Chris.Ruge@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, I filed the foregoing using the Court's CM/ECF system, which will cause a copy of the Government's Sentencing Memorandum to be sent to all counsel of record.

By: */s/Anne K. Yereniuk*
Assistant United States Attorney

BY: */s/ Chris Ruge*
Assistant United States Attorney